Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE CAROLINA
PANEL X

| | | |
|---|---|---|
| RAMÓN DÍAZ GÓMEZ<br><br>Demandante - Apelante<br><br>V.<br><br>JOSÉ FÉLIX TORRES RIVERA, ET AL.<br><br>Demandados – Apelados | KLAN202300949 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: CA2023CV03004 (406)<br><br>Sobre: Desahucio, Cobro de Dinero |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 12 de enero de 2024.

El 25 de octubre de 2023, compareció ante este Tribunal de Apelaciones el señor Ramón Díaz Gómez (en adelante, señor Díaz Gómez o apelante), por derecho propio, mediante recurso de apelación. Nos solicita que revoquemos la *Sentencia* emitida y notificada el 20 de octubre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Carolina. En virtud del referido dictamen, el foro *a quo* declaró no ha lugar la *Demanda* incoada por el apelante, contra el señor José Félix Torres Rivera; su esposa, Evelyn Rodríguez Acevedo y, la Sociedad de Bienes Gananciales compuesta por ambos (en adelante, apelados o parte apelada).

Por los fundamentos que expondremos a continuación, se *confirma* el dictamen apelado.

### I

La controversia de epígrafe tuvo su génesis en una *Demanda* de desahucio y cobro de dinero, instada el 25 de septiembre de 2023,

por el señor Díaz Gómez, en contra de la parte apelada. En esencia, el apelante sostuvo que, el 19 de noviembre de 2020[1], otorgó con la parte apelada un contrato de arrendamiento sobre una propiedad sita en el municipio de Carolina. Manifestó que, el canon de arrendamiento se pactó en mil sesenta dólares ($1,060.00) mensuales, pagaderos el día primero de cada mes y, que acordaron el pago de cincuenta dólares ($50.00) en concepto de recargo, cuando estos se atrasaran. Indicó también, que, la vigencia del contrato era de un (1) año pero, una vez expirado el mismo, continuaba mes a mes bajo iguales términos y condiciones. Esgrimió, además, que estipularon la cantidad de $1,060.00, como pago de los arrendatarios al arrendador, en caso de que surgiera una reclamación judicial por desahucio o cobro de dinero.

En adición a lo anterior, el señor Díaz Gómez alegó, que los apelados habían acumulado un total de veintitrés (23) meses en pagos atrasados, y que habían causado daños a la propiedad. Añadió que, solicitó a los apelados el desalojo de la propiedad, pero estos se habían negado. A esos efectos, el señor Díaz Gómez sostuvo que la parte apelada le adeudaba: (i) $2,120.00, por cánones de arrendamiento vencidos y no pagados; (ii) $1,150.00, en concepto de recargos por atraso; (iii) $1,060.00, por el procedimiento judicial, y (iv) $5,000.00, en concepto de daños a la propiedad, para un total de $9,330.00. El apelante solicitó que se ordenara el desalojo de la propiedad, así como el pago de la cantidad adeudada.

En la misma fecha, 25 de septiembre de 2023, el foro primario expidió *Emplazamiento y Citación por Desahucio,* dirigido a los apelados. A través del mismo, se ordenó una vista inicial para el 5 de octubre de 2023, a la 1:30 pm, mediante videoconferencia. El 4

---

[1] De entrada, es menester señalar que, del contrato de arrendamiento surge que, la fecha de otorgación fue el 9 de noviembre de 2020. Véase, apéndice del recurso de Apelación, pág. 18.

de octubre de 2023, el apelante presentó *Moción Sometiendo Emplazamiento(s) Diligenciado(s),* acreditando que los emplazamientos fueron debidamente diligenciados, ese mismo día.

El 5 de octubre de 2023, se llevó a cabo la vista pautada. A esta, comparecieron las partes, por derecho propio.[2] Por su pertinencia, reseñamos los testimonios de las partes a continuación.

**Señor Ramón Díaz Gómez (apelante)**

El señor Díaz Gómez sostuvo que, realizó un contrato de arrendamiento con los apelados, el 16 de noviembre de 2020, con fecha de culminación el 31 de octubre de 2021.[3] Manifestó que, desde dicha fecha, el contrato se renovó mes a mes por tácita reconducción.[4] Indicó que, el canon de arrendamiento fue pactado por $1,060.00 y, en caso de retraso por más de diez (10) días, habría un cargo por mora de $50.00 mensuales.[5] Expresó también que, los apelados ocupaban el inmueble, y no habían pagado los meses de agosto, septiembre y octubre.[6] Añadió que, estos no le habían entregado las llaves de la propiedad.[7]

**Señor José M. Torres Rivera (apelado)**

El señor Torres Rivera sostuvo que, ambos apelados estuvieron pagando los cánones de renta mes tras mes, desde que comenzaron a residir en la propiedad.[8] Indicó, que la primera vez que el señor Díaz Gómez hizo una alegación sobre los atrasos había sido en ese momento.[9] Expresó que, no se habían negado a desalojar la residencia y, que desde agosto 15 estaban residiendo en otra

---

[2] Hacemos constar la comparecencia de la señora Maité Cruz, representante del Programa de Asistencia para Renta de Puerto Rico. Conforme surge de la transcripción de la prueba oral, esta testificó que no había ninguna solicitud a nombre de los apelados en el sistema, y que los mismos no estaban en tiempo para presentar la misma. Véase, transcripción de la prueba oral, pág. 6, líneas 12-25 y, pág. 7, líneas 1-2.
[3] Transcripción de la prueba oral, pág. 8, líneas 14-25.
[4] *Íd.*, pág. 8, línea 25, pág. 9, líneas 1-3.
[5] *Íd.*, pág. 9, líneas 4-8.
[6] *Íd.*, líneas 9-17 y 21-23.
[7] Pág. 21, líneas 21-23.
[8] *Íd.*, pág. 13, líneas 11-15.
[9] *Íd.*, líneas 20-23.

propiedad.[10]   Esbozó que,  lo que quedaba en la propiedad eran unas plantas.[11]   Añadió que, la propiedad tenía polilla y filtraciones.[12] Manifestó también, que la primera vez que el señor Díaz Gómez se acercó a ellos, este le indicó que el propósito de desalojar la propiedad era porque una hija venía de Estados Unidos.[13]

**Señora Evelyn Rodríguez Acevedo (apelada)**

A preguntas del Juez, sobre si reconocían que pagaban la mensualidad fuera de término, la señora Rodríguez Acevedo arguyó que, informaron al licenciado Díaz Gómez que iban a pagar "con el pago del seguro social, y él no mostró ningún reparo."[14] Por otro lado, reconoció que no pagaron las mensualidades de agosto, septiembre y octubre.[15] Sobre ello, añadió dos cosas. En primer lugar, esgrimió que, no habían pagado porque se encontraban en conversaciones con el apelante, para venderle unos aires acondicionados. Adujo, además, que tenían una fianza.[16]   En segundo lugar, expresó que el mes de octubre no podía considerarse, porque ya se encontraban viviendo en otra propiedad y, que solo faltaba sacar unas cosas del inmueble.[17] Manifestó también, que tenía una comunicación por WhatsApp con el señor Díaz Gómez, en donde este le indicaba que debían dos (2) meses, y no tres (3).[18] Expresó, que de los $1,060.00 que pagaban de renta, $60.00 estaban destinados al mantenimiento, pero que el peticionario no pagó el mismo por varios meses, por lo que tenían que entrar como visitantes.[19]   Indicó que, la cocina de la propiedad tenía polilla y hongos.[20]

---

[10] *Íd.*, pág. 15, líneas 21-25.
[11] *Íd.*, pág. 16, líneas 20-24.
[12] *Íd.*, pág. 29, líneas 18-20.
[13] *Íd.*, pág. 33, líneas 8-12.
[14] *Íd.*, pág. 14, líneas 3-9.
[15] *Íd.*, pág. 15, línea 10.
[16] *Íd.*, líneas 10-14.
[17] *Íd.*, líneas 14-17.
[18] *Íd.*, líneas 18-19.
[19] *Íd.*, pág. 28, líneas 20-22.
[20] *Íd.*, pág. 29, líneas 5-6.

Cabe destacar que, durante el testimonio de los apelados, estos intentaron presentar unas fotografías que, según alegaron, ilustraban las condiciones de la propiedad. El Juez, les indicó a ambos que no podía apreciar las mismas a través de la cámara, por lo que los instruyó a que, una vez culminada la vista, las presentaran en la Secretaria del Tribunal, para que fuesen unidas al expediente en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). En cumplimiento, las partes presentaron las fotografías. Luego, el 13 de octubre de 2023, notificada el 17 de octubre de 2023, el foro primario dictó *Orden*, concediendo un término de cinco (5) días al apelante para que reaccionara a las fotografías.

En el ínterin, específicamente, el 12 de octubre de 2023, el señor Díaz Gómez presentó *Moción Informativa sobre Entrega de la Posesión de la Propiedad por la Parte Demandada a la Parte Demandante*. Por medio de esta, expuso que, el 10 de octubre de 2023, los apelados habían hecho entrega formalmente de las llaves de la propiedad. Añadió que, en el inmueble permanecían unos bienes pertenecientes a la parte apelada. En adición, indicó que, a la fecha, los apelados adeudaban un total de $5,440.00.

Posteriormente, el 19 de octubre de 2023, el señor Díaz Gómez presentó *Moción en Cumplimiento de Orden*, relacionada a las fotografías presentadas por la parte apelada. Por medio de esta, arguyó que: (i) nunca había visto dichas fotografías; (ii) las mismas no se distinguían claramente; (iii) no se desprendía en que fecha fueron tomadas ni quien las había tomado; (iv) en algunas no se distinguía si pertenecían a la propiedad; (v) las mismas no eran admisibles en evidencia, y, (vi) de todos modos, no eran pertinentes al caso.

Así las cosas, el 20 de octubre de 2023, el tribunal de instancia emitió dos dictámenes. Por un lado, emitió *Orden*,

disponiendo como sigue: "El Tribunal no admite las fotografías presentadas por los [apelados]".[21] Por otro, dictó la *Sentencia* apelada. En la misma, el foro *a quo* consignó las siguientes determinaciones de hechos:

1. Díaz Gómez es dueño en pleno dominio del inmueble sito en la calle Jumacao 288 en la urbanización Los Caciques del Municipio Autónomo de Carolina.

2. Los demandados son adultos mayores de 70 años.

3. En noviembre de 2020 las partes otorgaron un contrato mediante el cual Díaz Gómez cedió en arrendamiento a los demandados (arrendatarios) el inmueble descrito anteriormente por $1,060 mensuales pagaderos el primer día de cada mes.

4. Dicho contrato estuvo vigente desde el 16 de noviembre de 2020 hasta el 31 de octubre de 2021. Desde entonces se renovó mensualmente por tácita reconducción.

5. El contrato de arrendamiento impone una penalidad de $50 a cada pago que se haya efectuado tardíamente. También obliga a los arrendatarios a pagarle a Díaz Gómez $1,060 en honorarios de abogado en caso de que fuese necesario la presentación de una reclamación judicial relacionada con el contrato de arrendamiento objeto de esta demanda.

6. Los demandados depositaron una fianza de $1,060 cuando arrendaron el inmueble.

7. Los demandados no pagaron los plazos correspondientes a agosto, septiembre y octubre de este año.

8. Los demandados nunca pagaron a tiempo los cánones de arrendamiento.

9. Los demandados poseen y ocupan el inmueble descrito al amparo del contrato de arrendamiento objeto de esta demanda.

10. Durante una parte significativa del período de arrendamiento, los demandados tenían que entrar a la urbanización Los Caciques donde ubica el inmueble por el portón de acceso para visitantes. Esto por presuntos problemas de Díaz Gómez con el pago de las cuotas de mantenimiento de la urbanización.

11. Los gabinetes de cocina del inmueble tienen polilla y hongos, a tal punto que la polilla se desprende y

---

[21] Apéndice del recurso de apelación, pág. 41.

cae sobre la estufa por lo que los demandados dejaron de utilizarla.

12. El inmueble tiene filtraciones de agua en varias partes. En la pared de la escalera hay una filtración de agua que cuando llueve provoca que se inunde el área del comedor de la residencia.[22]

Consecuentemente, el tribunal de primera instancia declaró No Ha lugar la *Demanda* incoada. Inconforme, el señor Díaz Gómez instó el recurso de epígrafe, el 25 de octubre de 2023, en el que nos solicita que revisemos la aludida *Sentencia*. En su recurso, señala los siguientes errores:

- Erró el TPI al determinar rescindir un contrato que estaba vencido por sus propios t[é]rminos.

- Erró el TPI [al] determinar que el arrendador incumpli[ó] con los términos del contrato.

- Erró [el] TPI al no aplicar la doctrina de la tácita reconducción[.]

- Erró el TPI al determinar que el arrendador incumplió con los términos del contrato que ya estaba vencido.

**II**

### A. Deferencia Judicial

Según es sabido, las determinaciones de hechos y de credibilidad del tribunal sentenciador deben ser merecedoras de gran deferencia por parte de los foros apelativos, puesto que, el juzgador de instancia es quien –de ordinario– se encuentra en mejor posición para aquilatar la prueba testifical. *Pueblo v. Hernández Doble,* 210 DPR 850, 864 (2022); *Santiago Ortiz v. Real Legacy et al.,* 206 DPR 194, 219 (2021); *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 770-771 (2013); *Hernández Maldonado v. Taco Maker,* 181 DPR 281, 289 (2011); *SLG Rivera Carrasquillo v. AAA,* 177 DPR 341, 356 (2009). Bajo este supuesto, los foros de primera instancia tienen la oportunidad de oír, ver y apreciar el comportamiento de los testigos. *Pueblo v. Hernández Doble,* supra; *Santiago Ortiz v. Real Legacy et*

---

[22] *Íd.*, págs. 3-5.

*al.,* supra; *Meléndez Vega v. El Vocero de PR,* 189 DPR 123, 142 (2013).

No obstante, la deferencia judicial no es absoluta, pues podrá ser preterida en ciertas instancias. Nuestro Máximo Foro ha reiterado que, los tribunales apelativos no debemos intervenir con las determinaciones ni las adjudicaciones de los juzgadores de primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto. *Pueblo v. Hernández Doble,* supra; *Santiago Ortiz v. Real Legacy et al.*, supra; *Santiago Montañez v. Fresenius Medical,* 195 DPR 476, 490 (2016); *Dávila Nieves v. Meléndez Marín,* supra, pág. 753; *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 908-909 (2012); *SLG Rivera Carrasquillo v. AAA*, supra.

Como sabemos, "[l]a tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Sin embargo, no tenemos duda de que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad." *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013). Véase, además, *Pueblo v. Rivera Montalvo,* 205 DPR 352, 373 (2020); *Umpierre Matos v. Juelle Abello,* 203 DPR 254, 275 (2019), citando a *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000). Es por lo que, nuestra más Alta Curia ha definido la *discreción* como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Rivera et al. v. Arcos Dorados et al.,* 2023 TSPR 65, 212 DPR ___ (2023); *Pueblo v. Rivera Montalvo,* supra, citando a *Citibank et al. v. ACBI et al.,* 200 DPR 724, 735 (2018); *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 729 (2016); *SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 435, citando a *IG Builders et al. v. BBVAPR,* 185 DPR 307, 338 (2012); *Pueblo v. Rivera Santiago,* 176 DPR 559, 580 (2009). Así, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al

antojo o voluntad de uno, sin tasa ni limitación alguna." *Citibank et al. v. ACBI et al.*, supra, citando a *SLG Zapata-Rivera v. J.F. Montalvo,* supra; *Hietel v. PRTC*, 182 DPR 451, 459 (2011); *Santa Aponte v. Srio. del Senado*, 105 DPR 750, 770 (1977). Ello "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho." *SLG Zapata-Rivera v. J.F. Montalvo*, supra, citando a *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 658 (1997); *Hietel v. PRTC*, supra, citando a *Bco. Popular de P.R. v. Mun. de Aguadilla,* supra.

### B. Teoría General de los Contratos

Es normativa reiterada que, las obligaciones nacen de la ley, de los contratos y cuasicontratos, de los actos ilícitos, u omisiones en que interviene culpa o negligencia, y cualquier otro acto idóneo para producirlas.[23] Art. 1042 del Código Civil, 31 LPRA § 2992[24]; *Universal Ins. v. Popular Auto*, 207 DPR 228, 238 (2021); *NHIC et al. v. García Passalacqua et al.*, 206 DPR 105 (2021). Los contratos son negocios jurídicos bilaterales y en nuestro ordenamiento, constituyen una de las varias formas en que las personas pueden obligarse entre sí. *Amador v. Conc. Igl. Univ. de Jesucristo*, 150 DPR 571, 581 (2000). Los contratos se perfeccionan cuando median el objeto, consentimiento y causa. Art. 1213 del Código Civil, 31 LPRA § 3391[25]; *Pérez Rodríguez v. López Rodríguez et at.*, 210 DPR 163, 186 (2022). El contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa o prestar algún servicio. Art. 1206 del Código Civil, 31 LPRA § 3371[26]; *Pérez Rodríguez v. López Rodríguez et at.*, supra; *Aponte*

---

[23] El derecho aplicable en el caso de epígrafe se remite al Código Civil de Puerto Rico de 1930, puesto que, el contrato de arrendamiento firmado entre las partes tuvo lugar previo a la vigencia del nuevo Código Civil de Puerto Rico, Ley 55-2020, según enmendado, el cual, aunque fue aprobado el 1ro. de junio de 2020, entró en vigor el 28 de noviembre de 2020.
[24] Equivalente al artículo 1063 del Código Civil de 2020, 31 LPRA § 8984.
[25] Equivalente al artículo 1237 del Código Civil de 2020, 31 LPRA § 9771.
[26] Equivalente al artículo 1230 del Código Civil de 2020, 31 LPRA § 9751.

*Valentín et al. v. Pfizer Pharm*, 208 DPR 263, 284 (2021). En nuestro ordenamiento jurídico se ha reconocido el principio de libertad de contratación, el cual permite a las partes pactar los términos y condiciones que tengan por convenientes. *Pérez Rodríguez v. López Rodríguez et at.*, supra, pág. 187; *Burgos López et al. v. Condado Plaza*, 193 DPR 1, 7-8 (2015); *Arthur Young & Co. v. Vega III*, 136 DPR 157 (1994). No obstante, tal libertad no es infinita, puesto que, encuentra su límite en el Artículo 1207 del Código Civil, 31 LPRA § 3372. El referido artículo dispone que, los términos y condiciones que las partes establezcan serán válidas cuando no sean contrarias a la ley, la moral, ni al orden público. Art. 1207 del Código Civil, *supra*[27]; *Burgos López et al. v. Condado Plaza*, supra; *Oriental Bank v. Perapi*, 192 DPR 7, 15 (2014). Una vez perfeccionado el contrato, lo acordado tiene fuerza de ley entre las partes, "y desde entonces obligan, no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conforme a la buena fe, al uso y a la ley". Art. 1210 del Código Civil, 31 LPRA § 3375[28]; *Aponte Valentín v. Pfizer Pharms.,* supra; *Burgos López et al. v. Condado Plaza*, supra, pág. 8. Los tribunales estamos facultados para velar por el cumplimiento de los contratos, y no debemos relevar a una parte del cumplimiento de su obligación contractual cuando tal contrato sea legal, válido y no contenga vicio alguno. *Mercado, Quilichini v. UCPR*, 143 DPR 627 (1997).

### C. *Contrato de Arrendamiento, Tácita Reconducción y la doctrina de Exceptio non rite adimpleti contractus*

Un contrato de arrendamiento puede ser de cosas, obras o servicios. Art. 1432 del Código Civil, 31 LPRA § 4011. En el contrato de arrendamiento de una cosa, "una de las partes se obliga a dar a la otra el goce o uso de una cosa por tiempo determinado y precio

---

[27] Equivalente al artículo 1232 del Código Civil de 2020, 31 LPRA § 9753.
[28] Equivalente al artículo 1233 del Código Civil de 2020, 31 LPRA § 9754.

cierto". Art. 1433 del Código Civil, 31 LPRA § 4012. En virtud de este tipo de contrato, el arrendador está sujeto a una serie de obligaciones entre las que se encuentra entregar la cosa objeto del contrato al arrendatario, hacer las reparaciones necesarias durante el arrendamiento, para conservarla de manera que sirva para el uso al que fue destinada, así como mantener al arrendatario en el goce pacífico del arrendamiento por el término del contrato, y, por último, darle al arrendatario los recibos de los pagos hechos por este. Art. 1444 del Código Civil, 31 LPRA § 4051.

Por otro lado, el Artículo 1445 del Código Civil, 31 LPRA § 4052, dispone que todo arrendatario tendrá que cumplir con las siguientes obligaciones principales: (1) pagar el precio del arrendamiento en los términos convenidos; (2) usar la cosa arrendada como un diligente padre de familia, destinándola al uso pactado, y en defecto de pacto, según la naturaleza de la cosa arrendada; y (3) pagar los gastos que ocasione la escritura del contrato. Además, el arrendatario, al concluir el arrendamiento, deberá devolver la cosa tal como la recibió, a menos que hubiese perecido o se hubiera menoscabado por el tiempo o por causa inevitable. Art. 1451 del Código Civil, 31 LPRA § 4058.

Si el arrendatario incumple con sus obligaciones, el arrendador podrá pedir la rescisión del contrato y la indemnización de daños y perjuicios, o sólo esto último y dejar el contrato subsistente. Art. 1446 del Código Civil, 31 LPRA § 4053.

Por otro lado, el Código Civil estipula que, cuando el arrendamiento se ha pactado por tiempo determinado, el mismo concluye el día prefijado sin necesidad de requerimiento. Art. 1455 del Código Civil, 31 LPRA § 4062. A modo de excepción, el Artículo 1456 dispone que si el arrendatario continúa disfrutando de la cosa arrendada quince (15) días luego de terminado el contrato, y con aquiescencia del arrendador, "se entiende que hay tácita

reconducción por el tiempo que establecen los Artículos 1467 y 1471, a menos que haya precedido requerimiento." 31 LPRA § 4063. "La tácita reconducción no supone una prórroga del contrato original, sino que constituye un contrato nuevo." *Vicar Builders v. ELA*, 192 DPR 256, 261 (2015). No obstante, si concurren los requisitos de la tácita reconducción, dicho contrato se renueva. *Íd.* Al ocurrir un acuerdo tácito, "quedan reproducidos los mismos términos del contrato reconducido", a excepción del término del nuevo contrato, que deberá regirse por lo dispuesto en los artículos 1467 y 1471 del Código Civil, 31 LPRA §§ 4083 y 4092. *Íd.*

De otra parte, el Artículo 1077 del Código Civil, 31 LPRA § 3052, reconoce que, en caso de incumplimiento en una obligación recíproca, la parte perjudicada puede exigir su cumplimiento. Así pues, "en las obligaciones bilaterales[,] ninguna de las partes puede demandar el cumplimiento de la obligación contraria sin cumplir u ofrecer el cumplimiento de la obligación propia." *Álvarez v. Rivera*, 165 DPR 1, 20 (2005). Esta doctrina, se conoce como la excepción de contrato no cumplido, en latín, *exceptio non adimpleti contractus*. *Íd.* En esencia, la excepción de contrato no cumplido puede levantarse como defensa por una parte, cuando la que exige que se satisfaga la obligación, ha incumplido con la suya. *Íd.*, *Mora Dev. Corp. v. Sandín*, 118 DPR 733, 742 (1987).

En adición a la excepción de contrato no cumplido, la jurisprudencia ha reconocido la modalidad de excepción de contrato no cumplido adecuadamente, o, excepción de falta de cumplimiento regular[29], (*exceptio non rite adimpleti contractus*). *Álvarez v. Rivera*, supra, págs. 20-21. La excepción de contrato no cumplido adecuadamente es una defensa oponible al demandante "que

---

[29] Conocida también como, doctrina de cumplimiento parcial o defectuoso. Véase, *Álvarez v. Rivera*, supra, pág. 21, citando a D. Espín Canovas, *La excepción de incumplimiento contractual*, 17 An. Der. Civ. 543, 568 (1964).

pretende exigir el cumplimiento de una obligación a pesar de que él ha cumplido parcial o defectuosamente con su prestación." *Íd.*, págs. 21-22. En estos casos, el demandado no viene obligado a cumplir con su parte hasta tanto el demandante cumpla totalmente o libre de defectos con su prestación. *Íd.*, pág. 22.

**III**

Por encontrarse intrínsecamente relacionados, discutiremos los errores señalados de forma conjunta. En esencia, nos corresponde resolver si, incidió el foro primario al determinar que ambas partes incumplieron con sus obligaciones contractuales referentes al contrato de arrendamiento, de modo que, ninguna podía exigir a la otra el cumplimiento de su prestación.[30]

Tras un detenido análisis de la transcripción de la prueba oral y de la jurisprudencia aplicable, razonamos que las determinaciones de hechos consignadas por el foro de instancia encuentran apoyo en la prueba presentada por las partes, y a su vez, admitida y aquilatada por el foro primario. El apelante no logró derrotar la presunción de corrección que merecen dichas determinaciones de hechos.

Según reseñáramos, las partes otorgaron un contrato de arrendamiento sobre un inmueble ubicado en Carolina, el 9 de noviembre de 2020. Estas, acordaron que el contrato estaría vigente hasta el 31 de octubre de 2021. No obstante, incluyeron una cláusula estableciendo que, una vez expirado el término, el contrato continuaría mes a mes bajo iguales términos y condiciones pactados. Así obraron las partes. Luego de vencido el contrato, los

---

[30] Hacemos constar, que, de una lectura de la *Sentencia* apelada, notamos que, el foro de instancia aplicó las disposiciones del Código Civil de 2020 a la controversia de epígrafe. Asimismo, el apelante argumenta en su escrito de apelación utilizando dicho cuerpo legal. No obstante, surge del expediente que, el contrato de arrendamiento objeto de la presente controversia, fue firmado por las partes el 9 de noviembre de 2020. Como es sabido, la vigencia del nuevo Código Civil surgió a partir del 28 de noviembre de 2020. Ahora bien, cabe señalar que, las disposiciones del nuevo Código Civil utilizadas por el foro de instancia están comprendidas en el antiguo Código Civil, bajo distintos números de artículos.

apelados continuaron realizando los pagos del canon de arrendamiento, y el apelante recibiendo dichos pagos, por lo que se constituyó la tácita reconducción.[31] Como es sabido, la tácita reconducción supone la creación de un nuevo contrato, rigiéndose este por los mismos términos pactados en el contrato primitivo.[32] De modo que, tanto el apelante como los apelados se mantuvieron obligados a cumplir con lo pactado en el referido contrato, así como con las obligaciones que impone nuestro ordenamiento jurídico ante la otorgación de un contrato de arrendamiento.[33]

Ahora bien, del expediente ante nuestra consideración surge, y así lo hizo constar el foro de instancia, que ambas partes incumplieron con sus respectivas obligaciones. Por un lado, los apelados "nunca pagaron los cánones de arrendamiento en la fecha acordada en el contrato", así como tampoco "efectuaron los pagos correspondientes a agosto, septiembre y octubre".[34] De otra parte, el señor Díaz Gómez no proveyó un inmueble en condiciones óptimas, que le permitiera a los apelados el uso y disfrute pleno del mismo. Sobre ello, el tribunal *a quo* señaló, específicamente, lo siguiente:

> La prueba admitida también estableció que varias partes del inmueble tenían filtraciones de agua que impidieron a los demandados disfrutar plenamente del inmueble. Destacamos la filtración en la pared de la escalera porque cada vez que llovía se colaba tanta agua que el área del comedor se inundaba. También quedó demostrado que los gabinetes de [la] cocina tenían polilla y hongos que se desprendían y caían sobre la estufa a tal punto que los demandados se vieron forzados a descontinuar su uso. Añadimos los inconvenientes que por mucho tiempo confrontaron los demandados para entrar a la urbanización Los Caciques quienes sólo podían hacerlo a través del portón de acceso para visitantes presuntamente por problemas del arrendador con el pago de las cuotas de mantenimiento.[35]

---

[31] Artículo 1456 del Código Civil, *supra*.
[32] *Vicar Builders v. ELA*, supra.
[33] Véase, artículos 1444 y 1445 del Código Civil, *supra*.
[34] *Íd.*
[35] Apéndice del recurso de apelación, pág. 13.

Conforme el derecho expuesto, una vez perfeccionado el contrato[36], lo acordado tiene fuerza de ley entre las partes, "y desde entonces obligan, no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conforme a la buena fe, al uso y a la ley".[37] De modo que, cuando se incumple una obligación recíproca, la parte perjudicada puede exigir su cumplimiento.[38] Ahora bien, una parte que incumple con su propia obligación, total o parcial, no puede exigir el cumplimiento de la obligación contraria.[39]

Precisamente, esto último es lo que ocurre en el presente caso. Si bien es cierto que los apelados incumplieron con su obligación, el apelante también incumplió con la suya, por lo que no puede exigir a los apelados el cumplimiento de su obligación.

Insistimos en que, del expediente ante nos, no surge prueba alguna que nos permita descartar las determinaciones del foro de instancia. En adición, reiteramos que el apelante no logró derrotar la presunción de corrección que merecen las determinaciones del foro apelado. Tanto las determinaciones de hechos como las conclusiones de derecho del foro de instancia estuvieron basadas en la prueba que dicho foro tuvo ante su consideración, y de conformidad al derecho aplicable. Recordemos que, el tribunal *a quo* es el que se encuentra en mejor posición para aquilatar la prueba, toda vez que, son los tribunales de instancia quienes tienen la oportunidad de oír, ver y apreciar el comportamiento de los testigos.[40] Es por dicha razón, que las determinaciones de hechos

---

[36] El contrato queda perfeccionado cuando median el objeto, consentimiento y causa. Art. 1213 del Código Civil, *supra*; *Pérez Rodríguez v. López Rodríguez et at.*, supra, pág. 186.

[37] Art. 1210 del Código Civil, *supra*; *Aponte Valentín v. Pfizer Pharms.*, supra; *Burgos López et al. v. Condado Plaza*, supra.

[38] Artículo 1077 del Código Civil, *supra*.

[39] *Álvarez v. Rivera*, supra, pág. 20.

[40] Véase, *Pueblo v. Hernández Doble*, supra; *Santiago Ortiz v. Real Legacy et al.*, supra; *Dávila Nieves v. Meléndez Marín*, supra, págs. 770-771; *Meléndez Vega v. El Vocero de PR*, supra; *Hernández Maldonado v. Taco Maker*, supra; *SLG Rivera Carrasquillo v. AAA*, supra.

y de credibilidad del tribunal sentenciador deben ser merecedoras de gran deferencia por parte de esta segunda instancia judicial.[41]

Reconociendo la deferencia que el tribunal *a quo* se merece, debemos sostener sus determinaciones. Máxime, cuando no encontramos en las actuaciones de dicho foro la existencia de pasión, prejuicio, parcialidad o error manifiesto. En consecuencia, confirmamos la *Sentencia* apelada.

**IV**

Por los fundamentos expuestos, se *confirma* el dictamen apelado.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[41] *Íd.*